IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

BONITA BUIE, Individually and as
Administratrix of the Estate of
MAGDALINE McKNICKLE and on Behalf
of the Wrongful Death Beneficiaries
of MAGDALINE McKNICKLES, Deceased                        PLAINTIFF

VS.                                    CIVIL ACTION 3:06cv499–WHB–JCS

MARINER HEALTH CARE, INC.;
MARINER HEALTH CENTRAL, INC.;
MARINER HEALTH CARE MANAGEMENT CO.;
MHC MID AMERICA HOLDING CO.;
MCH HOLDING CO.; and NATIONAL HERITAGE
REALTY, INC. d/b/a COUNTRY LIVING CENTER;
and John Does 1–10                                       DEFENDANTS

## OPINION AND ORDER

This cause is before the Court on the Motion of Defendants to
Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil
Procedure and to Compel Arbitration.  The Court has considered the
Motion, Response, attachments to each, as well as supporting and
opposing authorities, and finds that the Motion is not well taken
and should be denied.

## I.  Factual Background and Procedural History

On March 25, 2005, Magdaline McKnickles ("McKnickles") was
admitted to the Countrybrook Living Center in Brookhaven,
Mississippi.  At the time of her admission, McKnickles was
accompanied by her daughter, Bonita Buie ("Buie"), the plaintiff
herein.  One of the forms completed on McKnickles' admission was an
"Agreement for Arbitration", which provides, in relevant part:

> The following is an agreement to arbitrate any dispute that might arise between Magdaline McKnickles ("Resident") and/or Bonita Buie ("Legal Representative") and Countrybrook ("Facility")...  The parties expressly agree and voluntarily enter into this binding Arbitration Agreement (the "Agreement")....
>
> ....
>
> The parties agree that they shall submit to binding arbitration all disputes against each other and their representatives, affiliates, governing bodies, agents and employees arising out of or in any way related or connected to the Admission Agreement and all matters related thereto including matters involving Resident's stay and care provided at the Facility, including but not limited to any disputes concerning alleged personal injury to the Resident caused by improper or inadequate care including allegations of medical malpractice ...

Motion to Dismiss, Ex. A (Arbitration Agreement, Section II, unnumbered paragraphs 1 & 3).  The subject Agreement was not signed by McKnickles, who was identified as the "Resident" for the purposes of the Agreement.  Buie signed the Agreement on the line designated "Signature of Legal Representative (if signing on behalf of Resident)."  There is a second line designated "Signature of Legal Representative (if signing on his or her own behalf)."  Buie did not sign on that line.

McKnickles died on April 4, 2005.  On September 8, 2006, Buie filed a wrongful death lawsuit in this Court against National Realty, Inc., d/b/a Countrybrook Living Center ("National") alleging that McKnickles' death was proximately caused by negligence and gross negligence on the part of the defendant.  On September 25, 2006, Buie filed a First Amended Complaint alleging

the same substantive claims for relief against National and several additional defendants.

The alleged basis for federal jurisdiction is diversity of citizenship under 28 U.S.C. § 1332.  For the purposes of diversity analysis, Buie is a citizen of the State of Mississippi.  The "Mariner Defendants" are all incorporated under the laws of the State of Delaware, and have their principal places of business in the State of Georgia.[1]  Defendant National is a Louisiana corporation.  Accordingly, the citizenship of Plaintiff is diverse to that of Defendants.  For the purpose of determining the amount in controversy, the Complaint seeks actual and punitive damages "in excess of the jurisdictional limit to meet diversity jurisdiction." Accordingly, it is apparent from the face of the Complaint that Buie seeks greater than $75,000 in this action.  As both complete diversity and the amount in controversy are satisfied, it appears that the Court may properly exercise subject matter jurisdiction over this case.  Defendants, however, contend the case should be dismissed pursuant to Rule 12(b)(1) because all of Buie's claims are subject to arbitration and, to that end, seek to compel such arbitration.

---

[1]  The "Mariner Defendants" are, collectively:  Mariner Health Care, Inc.; Mariner Health Central, Inc.; Mariner Healthcare Management Company; MHC MidAmerica Holding Company; and MHC Holding Company.

## II.  Legal Analysis

To determine whether parties should be compelled to arbitrate a claim or dispute, courts conduct a two-step analysis. See B.M. Perez & Assocs., Inc. v. Welch, 960 F.2d 534, 538 (5th Cir. 1992). First, the court determines whether the parties agreed to arbitrate by considering (1) whether the parties entered a valid arbitration agreement, and (2) whether the pending claim or dispute is within the scope of that agreement.  See Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996); American Heritage Life Ins. Co. v. Beasley, 174 F. Supp. 2d 450, 454 (N.D. Miss. 2001).  In the event the court finds the parties agreed to arbitrate, it next considers whether arbitration is nevertheless foreclosed because of one or more applicable statutes or policies. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 626 (1985) (finding that a court must consider "whether legal restraints external to the parties' agreement foreclose... arbitration.").

## A.   Did the parties enter a valid arbitration agreement?

To determine whether a valid arbitration agreement exists, courts are instructed to "apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); May v. Higbee Co., 372 F.3d 757, 764 (5th Cir. 2004).  For a contract to be valid under Mississippi law, the following elements must be satisfied:  (1) two

or more contracting parties; (2) consideration; (3) a sufficiently definite agreement; (4) legal capacity to enter a contract; (5) mutual assent; and (6) the absence of any other legal prohibition that would preclude contract formation.  See generally Rotenberry v. Hooker, 862 So. 2d 266, 270 (Miss. 2003); Lanier v. State, 635 So. 2d 813, 826 (Miss. 1994).  Defendants, as the party seeking to compel arbitration, bear the burden of proving the existence of a valid, binding arbitration agreement.  See Garner v. Hickman, 733 So. 2d 191, 195 (Miss. 1999) (finding, in breach of contract actions, that the party asserting a contractual claim "has the burden of proving by a preponderance of the evidence the existence of a valid and binding contract"); Warwick v. Matheney, 603 So. 2d 330, 336 (Miss. 1992) (same).

In support of their Motion to Compel Arbitration, Defendants allege:  "At the time of admission to Defendants' nursing facility, Bonita Buie, daughter of Magdaline McNickles, acting as an agent, personal representative and in a fiduciary capacity for her mother, Magdaline McNickles, signed the Arbitration Agreement dated March 25, 2005."  See Motion to Compel Arbitration, ¶ 3.  Defendants, however, have not presented any evidence to support their allegation that Buie possessed the authority to act on behalf of McNickles when the subject Agreement was signed.

The issue of whether a valid arbitration agreement exists in cases in which the agreement was signed on behalf of a patient by

a relative who later disavowed authority to act on that patient's behalf, has been addressed by several federal courts in Mississippi.  See e.g. Mariner Health Care, Inc. v. Ferguson, Civil Action No. 4:04cv245, 2006 WL 1851250 (N.D. Miss. June 30, 2006) (J. Davidson); Mariner Healthcare, Inc. v. Green, Civil Action No. 4:04cv246, 2006 WL 1626581 (N.D. Miss. June 7, 2006) (J. Mills); Mariner Health Care, Inc. v. Rhodes, Civil Action No. 5:04cv217 (S.D. Miss. Sept. 28, 2005) (J. Bramlette).  In each of these cases, the courts were asked to compel arbitration in cases in which the arbitration agreement was not signed by the decedent, but had been signed by a relative on the decedent's behalf.  The courts began their respective analyses by finding that under Mississippi agency law, the decedent (i.e the principal) would only be "bound by the actions of [her] agent within the scope of that agent's real or apparent authority."  See e.g. Ford v. Lamar Life Ins. Co., 513 So. 2d 880, 888 (Miss. 1987) (citing Baxter Porter & Sons Well Servicing Co. v. Venture Oil Corp., 488 So. 2d 793 (Miss. 1986)).

Real authority, which is also referred to as actual authority, may be expressed or implied.  See Bailey v. Worton, 752 So. 2d 470, 475 (Miss. Ct. App. 1999).  Under Mississippi law, "[a]n express agent is one who is in fact authorized by the principal to act on their behalf."  McFarland v. Entergy Miss., Inc., 919 So. 2d 894, 902 (Miss. 2005) (citations omitted).  As in Ferguson, Green, and Rhodes, Defendants in the case *sub judice* have not presented any

evidence to show that McNickles authorized or otherwise gave express authority to Buie to act as her agent for the purposes of signing the subject arbitration agreement.

To demonstrate apparent authority on the part of an agent requires a showing of:  (1) acts or conduct on the part of the principal indicating the agent's authority; (2) reasonable reliance on those acts or conduct by the third party; and (3) a detrimental change in the third party's position based on that reliance.  See Ferguson, 2006 WL 1851250, at *4 (citing Christ Methodist Episcopal Church v. S & S Constr. Co., Inc., 615 So. 2d 568, 573 (Miss. 1993)).  Further, apparent authority under agency law is only implicated in cases in which "the principal has intentionally or by want of ordinary care induced third parties to believe [a person is] his agent."  Cooley v. Brawner, 881 So. 2d 300, 302 (Miss Ct. App. 2004).  As in Ferguson, Green, and Rhodes, Defendants have not cited any conduct or action by McNickles on which they reasonably relied and, therefore, were induced to believe that Buie had authority to act as McNickles' agent when signing the subject arbitration agreement.

As there has been no showing that Buie had actual or apparent authority to bind McNickles, the Court finds that Defendants have failed to establish that Buie was acting as McNickles' agent when signing the subject arbitration agreement.  Additionally, as there has been no showing that Buie was empowered, either by court order

or statute,[2] to make legal decisions regarding McNickles' affairs,

the Court finds that Defendants have likewise failed to establish

their claim that Buie signed the subject Agreement as the personal

representative of, or in a fiduciary capacity for, McNickles.

Accordingly, the Court finds that Defendants have failed to

establish the existence of a valid arbitration agreement in this

case and, therefore, their Motion to Compel Arbitration should be

denied.  Additionally, as the Court may properly exercise diversity

of citizenship jurisdiction in this case, see supra at 3, the Court

finds that the Motion of Defendants to Dismiss pursuant to Rule

12(b)(1) must likewise be denied.

> For the foregoing reasons:

> IT IS THEREFORE ORDERED that the Motion of Defendants to

Dismiss and Compel Arbitration [Docket No. 4] is hereby denied.

> SO ORDERED this the 29th day of December, 2006.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

---

[2]    See Ferguson, 2006 WL 1851250, at *5 (finding that
Mississippi Code Annotated Section 41-41-211, which statutorily
allows certain individuals to make health care-related decisions
for patients who have been declared mentally incapacitated, does
not extend to permit decisions regarding arbitration); Rhodes,
Civil Action No. 5:04cv217, slip op. at 13 (same).